UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIKA HARRISON,

     Plaintiff,       Civil Action No. 14-CV-11983

vs.              HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

     Defendant.

_____/

**OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (Dkt. 9) AND (2) GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (Dkt. 11)**

## I.  INTRODUCTION

In this social security case, Plaintiff Erika Harrison, proceeding pro se, appeals from the

final determination of the Commissioner of Social Security, denying her applications for

disability insurance benefits and supplemental security income under the Social Security Act.[1]  A

hearing on Plaintiff's applications was held before Administrative Law Judge ("ALJ") Andrew

G. Sloss on February 11, 2013.  Administrative Record ("A.R.") at 17 (Dkt. 6).  On March 18,

2013, the ALJ issued a decision declaring that Plaintiff was not disabled from February 26, 2012,

---

[1] The procedural history accompanying Plaintiff's appeal is detailed elsewhere on the docket.
See 1/12/2016 Order (Dkt. 20).  However, in the interest of thoroughness, the Court will briefly
repeat the material facts here.  Plaintiff's former counsel terminated its representation of Plaintiff
in this social security appeal.  Plaintiff was informed of this fact through a letter from the firm
and multiple notices from the Court.  Plaintiff was given a window of opportunity in which to
secure new counsel, and no new counsel appeared on her behalf.  Subsequently, the Court
ordered Plaintiff to appear for an in-person status conference to discuss how to proceed with her
appeal.  Plaintiff failed to appear.  At the hearing, the Court determined the most prudent course
of action was to decide Plaintiff's appeal in its current posture, i.e. based on the briefs that have
already been filed in this case.  An order was issued to this effect and mailed to Plaintiff's last
known address.  See 1/12/2016 Order; 1/12/2016 Text-Only Certificate of Service.  Since then,
Plaintiff has not made any attempt to contact the Court.

the alleged onset of disability, through the date of the decision. Id. at 26. Plaintiff requested review of this decision, id. at 12, and the Appeals Council denied the request, id. at 1. At that point, the ALJ's decision became the final decision of the Commissioner. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004). Plaintiff then filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). The parties have filed cross-motions for summary judgment (Dkts. 9, 11). As discussed in more detail below, the Court now denies Plaintiff's motion for summary judgment and grants Defendant's motion for summary judgment.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court's "review is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court "may look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013).

"Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether an individual is disabled, the Commissioner applies the following five-step sequential disability analysis: (i) whether the

2

claimant performed substantial gainful activity during the disability period; (ii) whether the claimant has a severe medically determinable impairment; (iii) whether the claimant has an impairment that meets or equals a listed impairment; (iv) whether the claimant, in light of her residual functional capacity ("RFC") can return to her past relevant work; and (v) if not, whether the claimant, in light of her RFC and her age, education, and work experience, can make an adjustment to other work.   See 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process).  Plaintiff has the burden of proof for the first four steps, but, at step five, the burden shifts to the Commissioner to show that "notwithstanding the claimant's impairment, [she] retains the residual functional capacity to perform specific jobs existing in the national economy."  Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).

## III.  THE ALJ'S DECISION

The ALJ based his decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.  The ALJ found as follows:

- Under Step One, Plaintiff met the insured status requirements through September 30, 2013, and had not engaged in any substantial gainful activity since February 26, 2012, the alleged onset of disability.  A.R. at 19.

- Under Step Two, Plaintiff had the following severe impairments: "degenerative disk disease, carpal tunnel syndrome, and major depressive disorder, recurrent."  Id.

- Under Step Three, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment.  Id.

- Plaintiff had the RFC "to perform light work . . . except [Plaintiff] can frequently climb, stoop, kneel, crouch, or crawl.  [Plaintiff] is limited to frequent handling. [Plaintiff's] psychological symptoms limit her to unskilled work . . . that has only occasional changes in the work setting and that involves only occasional interaction with the general public, coworkers, and supervisors."  Id. at 21.

- Under Step Four, Plaintiff was unable to perform past relevant work.  Id. at 25.

- Under Step Five, Plaintiff's age, education, work experience, and RFC allowed her to perform the following jobs that existed in significant numbers in the national

3

economy: bench assembler (3,000 jobs); food preparation worker (2,500 jobs); and packer (5,000 jobs)  Id. at 25-26.

## IV.  ANALYSIS

Plaintiff appears to challenge the ALJ's decision on three grounds: (i) the ALJ improperly assessed Plaintiff's credibility when he discounted her complaints of pain and her testimony regarding the extent of her functional impairments; (ii) the ALJ failed to carry the Commissioner's burden at Step Five when he presented the Vocational Expert ("VE") with a hypothetical that did not accurately describe Plaintiff in all relevant respects; and (iii) the ALJ did not properly evaluate medical source opinions, and did not give full credence to the "treating physician" rule.  The Court takes each argument in turn, and concludes that all three lack merit.

### A. The ALJ's Credibility Determination

As summarized by the Sixth Circuit, the following legal standards govern an ALJ's credibility determination:

> It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  Rather, such determinations must find support in the record.  Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record." The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.  Consistency of the various pieces of information contained in the record should be scrutinized.  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

> Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be

4

> sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

Rogers, 486 F.3d at 247-248 (citations and footnote omitted).

The bulk of Plaintiff's argument concerning the ALJ's credibility determination merely recites the legal framework within which the ALJ is free to make a judgment regarding a claimant's credibility. See Pl. Mot. at 6-8. In the way of further analysis, Plaintiff references her own testimony, arguing that such "testimony is backed up in the medical record and for the ALJ to indicate that her testimony is only partially credible is clearly in error." Id. at 10-11, 12.[2] The medical documentation Plaintiff uses for support simply lays out various diagnoses and vague symptomology. See id. at 11-12. However, "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." Hill v. Comm'r of Soc. Sec., 560 F. App'x 547, 551 (6th Cir. 2014). And the diagnoses alone do not speak to the severity of the condition, or the functional limitations associated with it. See Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Accordingly, the documented existence of certain medical conditions, without more, does not preclude the ALJ from discounting a claimant's credibility as to the functional limitations associated with those conditions, when other aspects of the record support the ALJ's credibility determination.

---

[2] Specifically, Plaintiff points to testimony that (i) she has pain that radiates up her wrist; (ii) she can pick up small parts, so long as they are "not really heavy"; (iii) her medications occasionally cause her to fall asleep; (iv) she has to move around two-to-three times per half hour of sitting; (v) she can stand, at most, for half an hour; (vi) she has daily anxiety and cannot be around a lot of people; (vii) she tends to seclude herself; and (viii) she has memory problems such that she cannot recall what she read in a newspaper. Pl. Mot. at 10-11.

Moreover, it appears that the ALJ adequately evaluated Plaintiff's subjective complaints of pain.  Regarding disability claims premised on subjective allegations of pain, the Sixth Circuit has stated the following:

> [T]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. The standard does not require, however, objective evidence of the pain itself.

Duncan v. Sec'y of Health & Hum. Servs., 801 F.2d 847, 853 (6th Cir. 1986) (citations and quotation marks omitted); see also 20 C.F.R. § 404.1529 (setting forth guidelines for analyzing subjective claims of pain).

Here, Plaintiff alleges disability primarily on the basis of back pain and carpal tunnel syndrome.  A.R. at 22.  The ALJ found that Plaintiff's impairments could reasonably be expected to cause the symptoms, but that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of such symptoms was not fully credible.  Id. at 22, 24.  The ALJ went through the objective medical evidence, including (i) the January 2012 electromyography ("EMG") evidencing bilateral carpal tunnel syndrome in her right (moderate) and left (mild) wrists; (ii) the January 2012 MRI evidencing mild spondylotic changes at the L4-L5 and L5-S1 portions of the spine with mild facet hypertrophy and a bulging disk; and (iii) a March 2012 EMG of Plaintiff's bilateral lower extremities evidencing only L5-S1 root irritation, which was likely related to Plaintiff's bulging disk.  Id. at 22.

However, the ALJ also noted that contemporaneous neurological, sensory, and motor examinations were all normal, and the record indicated that Plaintiff displayed a normal gait.  Id. Similarly, the March 2012 EMG was essentially normal, apart from the above-mentioned root

irritation. Id. It was reasonable for the ALJ to conclude that the objective medical evidence, which documented conditions mild to moderate in nature, did not evince conditions sufficiently severe as to give rise to disabling symptoms of pain.

And, contrary to Plaintiff's suggestion, the ALJ did not rely solely on the objective medical evidence in evaluating her credibility. See Pl. Mot. at 7-8; accord Felisky v. Bowen, 35 F.3d 1027, 1039 (6th Cir. 1994) (ALJ must look beyond the content of the medical record in evaluating subjective claims of pain). The decision takes into account that Plaintiff's neurological specialist, Dr. Nael Tarakji, M.D., treated Plaintiff with trigger-point injections and medication, and referred her for physical therapy, but believed that heavy narcotics were not necessary. A.R. at 22. The ALJ remarked that there was no evidence that Plaintiff followed through on the recommendation for physical therapy. Id. The ALJ also observed that, while carpal tunnel release surgery had been recommended, by Plaintiff's own admissions, she was capable of holding everyday objects, such as a glass of water or a pencil, and that she could pick up small parts "as long as they're not really heavy." Id. at 24, 45. Further, the ALJ found that aside from taking Vicodin, Plaintiff had very little treatment for her back ailment. Id.[3] Thus, the ALJ took into consideration Plaintiff's own testimony regarding day-to-day abilities and activities, as well as the type and extent of treatment Plaintiff sought for her conditions, and did not rely solely on the objective medical evidence in evaluating Plaintiff's credibility.[4]

---

[3] It would appear as though Plaintiff was prescribed the Vicodin from her primary care physician, Dr. Linval K. Fleetwood, M.D. However, the records from Dr. Fleetwood, reflecting various visits and examinations from May 2011 through December 2012, are handwritten and largely illegible. See A.R. at 207-212, 264-265, 296-297. In any event, Plaintiff does not rely on any of the records from Dr. Fleetwood to demonstrate her disability.

[4] Plaintiff does not suggest that the ALJ either misconstrued or failed to consider certain objective medical evidence in the record. Based on the Court's own review of the record, the ALJ's recitation of the evidence appears accurate.

Similarly, with respect to Plaintiff's psychological ailments, the ALJ did consider Plaintiff's depression to be a severe impairment, but found that Plaintiff exaggerated her symptomology when she characterized a hospital emergency department visit as a suicide attempt when it was not; instead, Plaintiff experienced suicide ideation and was seeking treatment. Id. at 24-25, 271. The ALJ further referenced Plaintiff's affirmation that she would not take her own life out of concern for her daughter. Id. at 25. Plaintiff again relies on her testimony regarding her anxiety, namely that she cannot be around a lot of people and tends to seclude herself, and her memory impairment in support of her credibility, Pl. Mot. at 11; however, the ALJ accounted for much of this in the RFC analysis, see A.R. at 21 (limiting her to unskilled work with only occasional changes in the work setting, in addition to only occasional interaction with others). Plaintiff fails to provide any argument as to why her impairments require restrictions beyond what the ALJ has already put into place. Additionally, the ALJ attributed Plaintiff's impaired memory to her use of medicinal marijuana, not to her depression. Id. at 25. And, finally, the ALJ is in the best position to make a first-hand observation regarding Plaintiff's overall demeanor at the hearing, including, as relevant here, her concentration or attention and her level of comfort with the underlying social situation. See Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("Furthermore, an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.").

This Court does not make decisions about credibility. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). Moreover, an ALJ's credibility determination should not be disturbed absent a compelling reason. Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001). Plaintiff may

disagree with the ALJ's credibility evaluation, but she has not provided any compelling or significant reason for this Court to displace that evaluation.

Indeed, the ALJ's credibility determination is supported by substantial evidence. For example, the record contains statements from Plaintiff that indicate her physical and mental impairments have been present for a number of years, including while she was working at her last job, which ended on February 24, 2012. See A.R. 67, 79 (indicating last job started in July 2011 and ended on February 24, 2012); id. at 44 (testifying that her back pain started a year to six months prior to her former job, but she "just kind of dealt with it at that point"); id. (testifying that she was on medication while she was working); id. at 45 (testifying that she has had "high anxiety for many years"); id. at 46 (testifying that she dealt with her anxiety while working at a factory because she "had to do what [she] had to do"). Many of the medical records documenting Plaintiff's physical and mental impairments are dated during Plaintiff's last period of employment. Id. at 194-204 (mental health progress notes dated from May 2011 through October 2011); id. at 222 (January 2012 EMG results for Plaintiff's hands); id. at 223-224 (medical examination dated January 2, 2012); id. at 226-227 (January 2012 MRI results for Plaintiff's lumbar spine). Thus, Plaintiff's own documented history is inconsistent with her statement that, "[a]t that time [she] wasn't experiencing any of the . . . issues [she] [had] been having for a few years now." Id. at 42.

Moreover, these impairments did not appear to preclude Plaintiff from performing her job. In fact, there is some indication that Plaintiff was doing well in her position prior to being terminated, in that she was moved from production to team leader in what appears to have been a promotion. Id. at 41-42. And while the record is unclear why Plaintiff was terminated, as she has offered varying reasons, it is clear that she was terminated and did not voluntarily leave her

position due to her ailments.  See id. at 44 (testifying that she was fired because she was missing time due to unspecified "appointments"); id. at 160 (stopped working around February 26, 2012 because she was fired); id. at 234 (stating she believed she was fired because she stumbled as a side effect of Lyrica).  The vagueness surrounding the reason for Plaintiff's termination, coupled with the fact that Plaintiff appeared to be adequately functioning at work at the time her alleged ailments were diagnosed, formed a reasonable basis for discounting Plaintiff's credibility regarding the severity of her functional limitations.  See Durrett v. Apfel, No. IP 99-904-C H/G, 2000 WL 680430, at *4 (S.D. Ind. Mar. 27, 2000) (when record indicated that claimant worked a variety of jobs notwithstanding her alleged physical impairment, ALJ was justified in discounting the claimant's credibility regarding the alleged impairment).

Indeed, Plaintiff testified that she was collecting unemployment, A.R. at 41, which is "inherently inconsistent" with her claims that she was completely disabled.  Workman v. Comm'r of Soc. Sec., 105 F. App'x 794, 801 (6th Cir. 2004) (citing Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983)).  As other courts have observed, "[t]here is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work."  Id. at 801-802 (quoting Bowden v. Comm'r of Soc. Sec., 173 F.3d 854, 1999 WL 98378, at *7 (6th Cir. Jan. 29, 1999) (Table)).

Furthermore, there is no evidence that Plaintiff sought out additional treatment for her back, aside from the medications prescribed by her primary care physician.  There is no indication that any other type of intervention, aside from physical therapy, was discussed, and Plaintiff did not offer any testimony suggesting that she took measures beyond medication to relieve her back pain.  There is also very little objective medical evidence to support Plaintiff's

history and intensity of migraines.  The only evidence Plaintiff cites in support of her subjective testimony and reports is a reference to her migraines contained in a psychiatric evaluation.  <u>See</u> Pl. Mot. at 11; A.R. at 249 (cursory notation of "migraines 4-5 days" under "Medical History").  Accordingly, there is sufficient evidence in the record to justify discounting Plaintiff's credibility regarding the extent of her functional limitations.  <u>See</u> <u>McClanahan v. Comm'r of Soc. Sec.</u>, 474 F.3d 830, 833 (6th Cir. 2006) ("Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (internal quotations omitted)).

### B.  The ALJ's Hypothetical Question to the VE

Next, Plaintiff challenges the ALJ's disability determination on the grounds that the hypothetical posed to the VE did not describe Plaintiff in all significant and relevant aspects, and, therefore, the VE's response cannot constitute substantial evidence that there exist significant jobs in the national economy that Plaintiff can perform.  Pl. Mot. at 10.  Specifically, Plaintiff suggests that the ALJ's hypothetical to the VE should have included limitations such as being absent from work more than twice a month "due to [Plaintiff's] symptoms and also doctor appointments," and "having to lay down during the day at intermittent and unexpected times" so as to be off-task 15-20% of the time.  <u>Id.</u> at 12.  According to the VE, these limitations would be work-preclusive.  <u>Id.</u>  But "in formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible."  <u>Gant v. Comm'r of Soc. Sec.</u>, 372 F. App'x 582, 585 (6th Cir. 2010).  And the Court has already concluded that the ALJ's credibility determination should not be disturbed.  Plaintiff presents no additional argument or analysis with respect to these two alleged limitations that would persuade the Court differently.

Additionally, Plaintiff testified that she may have to call into work three-to-four times per month, not necessarily because of her physical or mental impairments, but, rather, because she has "so many appointments and [her] daughter has so many appointments." A.R. at 51. Plaintiff does not provide — nor does the Court's independent review discover — any record evidence that the treatment for Plaintiff's alleged ailments require her to miss three-to-four full shifts/days of work a month. See Robinson v. Astrue, No. 1:10-CV-689, 2011 WL 6217436, at *5, 6-7 (S.D. Ohio Dec. 14, 2011) (when record failed to establish need for frequent treatments that would necessarily require missing a full day of work, ALJ's conclusion that the claimant's medical treatment would not subject her to excessive absenteeism was supported by substantial evidence). And to the extent that Plaintiff must miss work due to her daughter's appointments, those absences would be unrelated to Plaintiff's claim for disability. See id. at *6 (observing that "many of the records [the p]laintiff cited to establish excessive absenteeism were not related to any condition on which her disability claim is founded," when affirming the ALJ's finding that the plaintiff's alleged disability would not subject her to excessive absenteeism as supported by substantial evidence).

Accordingly, it was entirely appropriate for the ALJ to withhold Plaintiff's alleged absenteeism from the hypothetical posed to the VE.

### C.  Medical Source Opinions and the Treating-Physician Rule

Lastly, Plaintiff recites at length the standards governing an ALJ's obligation to consider medical source opinions and, specifically, to carefully consider and weigh the medical source opinions from treating physicians. Pl. Mot. at 12-14. However, Plaintiff fails to apply any of those standards to her own case. She does not identify any medical source opinion that the ALJ failed to consider or adopt, nor does she identify any inconsistency between the RFC and a

12

medical source opinion.  She further fails to reference any treating source opinions contained in the record, let alone a treating source opinion that the ALJ failed to consider and/or grant the appropriate weight.[5]  The utter lack of factual development alone waives this argument.  <u>See</u> <u>McPherson v. Kelsey</u>, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."); <u>Deguise v. Comm'r of Soc. Sec.</u>, No. 12-10590, 2013 WL 1189967, at *7 (E.D. Mich. Feb. 19, 2013) ("[P]laintiff cannot simply make the claim that the ALJ erred . . . while leaving it to the Court to scour the record to support this claim."), <u>report and recommendation adopted by</u> 2013 WL 1187291 (E.D. Mich. Mar. 22, 2013); <u>Crocker v. Comm'r of Soc. Sec.</u>, No. 1:08-CV-1091, 2010 WL 882831, at *6 (W.D. Mich. Mar. 9, 2010) ("This court need not make the lawyer's case by scouring the party's various submissions to piece together appropriate arguments.").

## V.  CONCLUSION

For the aforementioned reasons, the Court denies Plaintiff's motion for summary judgment (Dkt. 9) and grants Defendant's motion for summary judgment (Dkt. 11).

SO ORDERED.

Dated:  February 26, 2016                    s/Mark A. Goldsmith
Detroit, Michigan                             MARK A. GOLDSMITH
                                              United States District Judge

---

[5] In fact, Defendant states that there is no treating source medical opinion, which accords with the Court's own review of the record.  <u>See</u> Def. Mot. at 8 n.1.

13

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2016.

<div style="margin-left:40%">

s/Karri Sandusky
Case Manager

</div>